UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A. W., et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>SANTA ROSA CITY SCHOOLS, et al.,<br><br>  Defendants. | Case No. 25-cv-00034-DMR<br><br>**ORDER GRANTING THE DISTRICT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 4 |

On September 24, 2024, Plaintiff A.W., by and through his guardian ad litem Sheria Weston ("Weston"), filed a complaint in Sonoma County Superior Court against Defendants Santa Rosa City Schools (the "District"), School Principal Amy Schlueter, and Does 1-20, inclusive, alleging violations of state and federal law, and seeking damages as well as declaratory and injunctive relief. [Docket No. 1 ("Compl.").] On January 2, 2025, the District removed the case to federal court. [*Id.*] The District moves to dismiss some of A.W.'s claims. [Docket No. 4 ("MTD").] A.W. opposes [Docket No. 16 ("Opp'n")], and the District filed a reply [Docket No. 17 ("Reply")]. This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the reasons discussed below, the District's motion to dismiss is granted.

**I.   BACKGROUND**

A.W. makes the following allegations in the complaint, which the court takes as true for purposes of this motion.[1]

In 2023 and 2024, A.W. was a 7th- and 8th-grade student enrolled at Rincon Valley Middle School in Santa Rosa, California, within the District. [Compl. ¶ 13.] During those years,

---
[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

1   A.W. alleges that he experienced racial harassment with no response from the administration and
2   was repeatedly punished more than other students for minor disciplinary infractions.[2]

3   Beginning in January 2023, A.W. alleges that another student in his second-period math
4   class repeatedly called him the "n-word." [*Id.* ¶ 16.] The math teacher and other school staff were
5   aware of the harassment but did not take action to halt it, nor was the student disciplined or
6   otherwise punished for his conduct, despite the fact that the District has a policy to prohibit
7   "harassment or bullying" based on race. [*Id.* ¶¶ 17, 47.] A.W. alleges there are "numerous
8   incidents" where the District directly violated its own policies regarding discrimination and
9   harassment based on race. [*Id.* ¶¶ 18, 35-41 (describing the District's policies against
10  discrimination and harassment, and the administrative complaint process).]

11  On January 22, 2023, after being subjected to "constant" racial slurs from the same
12  student, A.W. alleges that he knocked the student's hat off his head without making any physical
13  contact. [*Id.* ¶ 19.] On January 23, 2023, the student's friend retaliated against A.W. by punching
14  A.W. twice in the jaw. [*Id.* ¶ 20.] A.W. did not respond or retaliate. [*Id.*] A teacher witnessed
15  this incident and sent the two boys to the vice principal's office. [*Id.* ¶ 21.] Weston was called in
16  and had a conversation with the vice principal, which "turned into an interrogation of A.W.," who
17  was questioned about what he did to create the situation. [*Id.*] The school responded by removing
18  A.W. from his class and "forc[ing] him to speak to his aggressors in a 'restorative circle.'" [*Id.*
19  ¶ 22.] The student who assaulted A.W. received a two-day suspension, and the school took no
20  further steps to ensure A.W.'s safety. [*Id.*]

21  A week after A.W. was punched, Weston emailed the school to voice her concerns about
22  A.W.'s safety. [*Id.* ¶ 24.] In response, the school pulled A.W. from his classes with the offending
23  student and switched A.W.'s schedule. [*Id.* ¶ 25.] Weston reached out to the NAACP for help
24  and voiced her concerns about how Principal Schlueter was handling the situation. [*Id.* ¶ 26.]

25  On February 22, 2023, Weston met with A.W. and his math teacher "regarding struggles

---

[2] Although the complaint fails to identify A.W.'s race, the court infers from the allegations that he is Black.

2

1  he had been having with his learning given the abrupt and forced" change to his schedule. [*Id.*
2  ¶ 27.] Schlueter interrupted this meeting and began "interrogating" Weston about the complaints
3  she made to the NAACP. [*Id.*] A.W. was shocked by Schlueter's behavior, and Weston was
4  forced to stop the meeting early because Schlueter "kept trying to change the topic of the
5  discussion to Title VI violation concerns that Weston had made to the NAACP." [*Id.*]
6      Also in February 2023, new Vice Principal Stephen Coyle was called to A.W.'s math class
7  to remove him for "stacking books on top of each other" with his friends. [*Id.* ¶ 29.] A.W. was
8  the only student removed from class based on this incident, even though others were involved.
9  A.W. was sent to the principal's office because Coyle believed he had "smoked marijuana" due to
10 his "laughing during class." [*Id.*]
11     On May 18, 2023, A.W. was observed by a teacher "greeting another student" and was
12 sent to the principal's office for "exchanging drugs for money" with no actual evidence to support
13 these claims. [*Id.* ¶ 31.] A.W. was sent to Ms. Audrey, the guidance counsel and the only Black
14 staff member at the school, who was forced to search A.W.'s personal belongings to look for
15 drugs. [*Id.* ¶ 32.] Audrey did not find evidence of drugs or money. [*Id.*] When Weston picked
16 up A.W. that day, Audrey pulled her aside and said she believed "that the school is unfairly
17 targeting A.W. on the basis of race." [*Id.* ¶ 33.] Weston emailed Schlueter to ask why A.W. was
18 searched with no basis but did not receive a direct response or answer. [*Id.*]
19     In other examples of discriminatory incidents, A.W. was banned from basketball tryouts
20 after being "accused of using a vape," and was put on the "No Roam List," which prohibited him
21 from using the restroom without first checking in with the office. [*Id.* ¶ 34.]
22     A.W. was suspended for a total of ten days in 2023-2024 for minor incidents. [*Id.* ¶ 42.]
23 On October 24, 2023, A.W. was suspended for two and a half days for "threatening language
24 towards a staff member." [*Id.* ¶ 43.] On February 16, 2024, A.W. was suspended in school for
25 one day because he "violated his break as a tool"—that is, he used technology in class, even
26 though he was permitted to use this technology under his Individualized Education Plan ("IEP").
27 [*Id.* ¶ 46.] The school never informed the Westons about the suspension, and they only became
28 aware of the incident when A.W. texted them about it. [*Id.*] On February 20, 2024, A.W. was

3

1  suspended for two days for "refusing to move away from a window," because it was "intimidating
2  another student." [*Id.* ¶ 49.] By contrast, students at school who were caught screaming the "n-
3  word" on a TikTok video were not punished or disciplined. [*Id.* ¶ 50.] Instead, the school held an
4  assembly on cyber-bullying led by a White police officer who used the "n-word." [*Id.*]

5        At some point, the school forced A.W. to sign a "Behavior Contract" without Weston
6  present. [*Id.* ¶ 52.] This was "the same contract discussed with Mrs. Weston previously that
7  stripped A.W. of his fundamental rights." [*Id.*] A.W. felt compelled to sign the contract. [*Id.*]
8  Once Weston found out, she immediately emailed the school to have the contract repealed. [*Id.*
9  ¶ 53.]

10       On April 11, 2024, the District called the police on A.W. after he approached a student
11 who had used the "n-word", and the student responded by calling A.W. the "n-word" and then
12 "continued to hurl homophobic slurs at A.W." while being shielded by staff. [*Id.* ¶¶ 54-55.] The
13 offending student was not disciplined, despite the school's policy against use of slurs and racist
14 behavior. [*Id.* ¶ 56.] However, according to the school's report, A.W. was "so persistent and
15 aggressive" that the school had to call 911 and entered a campus-wide lockdown for 15 minutes.
16 [*Id.* ¶¶ 57-58.]

17       A.W. alleges generally that the District has exhibited bias in favor of protecting its White
18 students. For example, according to U.S. Department of Education statistics in 2017-2018, only
19 2.2% of all enrolled students were Black while 35.5% of the students were White, yet 7.3% of the
20 students referred to law enforcement by the District were Black, while 14.9% of the referred
21 students were White. [*Id.* ¶ 15.]

22 **II.    LEGAL STANDARD GOVERNING MOTIONS TO DISMISS**

23       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal
24 sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51
25 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim,
26 the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*,
27 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there
28 is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v.*

4

*New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted). In the absence of an "apparent reason," such as undue delay, bad faith or dilatory motive, prejudice to the opposing party, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

### III. DISCUSSION

A.W. alleges the following claims: (1) race discrimination in violation of the California Unruh Civil Rights Act, against Schlueter [Compl. ¶¶ 59-64]; (2) race discrimination in violation of 42 U.S.C. § 1983 based on Fourteenth Amendment violations, against all Defendants [*id.* ¶¶ 65-69]; (3) race discrimination in violation of Title VI of the Civil Rights Act of 1964, against all Defendants [*id.* ¶¶ 70-75]; (4) violation of California Education Code § 220, against all Defendants [*id.* ¶¶ 76-81]; and (5) negligence, against all Defendants [*id.* ¶¶ 82-88].

The District moves to dismiss A.W.'s first (Unruh), second (section 1983), and fourth (California Education Code section 220) claims. [Mot. at 1-2.]

#### A.  Unruh Act

A.W. only pleaded his Unruh claim against Schlueter. [*See* Compl. at 10.] The District

nevertheless moves to dismiss this claim, and both parties briefed the issue. [*See* Mot. at 5-7; Opp'n at 13-15; Reply at 1-2.] The court analyzes the Unruh claim in light of the parties' briefing and A.W.'s general request for leave to amend. [Opp'n at 17-18.]

The Unruh Act protects "[a]ll persons within the jurisdiction of [California]" from discrimination based on protected characteristics such as race "in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). "To state a claim under the Unruh Act, a plaintiff must allege: '(1) she suffered discrimination in a business establishment; (2) her protected status was a motivating factor; (3) the defendant's action was the result of its intentional discrimination against the plaintiff; and (4) the wrongful conduct caused her to suffer injury." *Kelly v. CubeSmart*, No. 22-cv-05470-HSG, 2023 WL 4108187, at *5 (N.D. Cal. June 21, 2023) (internal quotation marks and citation omitted). However, "courts have held that public schools and their employees are not subject to suit under the Unruh Act because a public school district is not considered a business establishment under the Act." *L. T. v. Eleanor Murray Fallon Middle Sch.*, No. 24-cv-00110-TSH, 2024 WL 3678014, at *4 (N.D. Cal. Aug. 5, 2024) (citing *Brennon B. v. Superior Ct.*, 13 Cal. 5th 662, 684 (2022), *reh'g denied* (Aug. 31, 2022)).

In *Brennon*, the California Supreme Court analyzed the legislative history of the Unruh Act, as well as state and federal cases addressing Unruh Act claims against school districts. It held that a California public school district is "not a 'business establishment' for purposes of the [Unruh] Act when it provide[s] educational services to [a plaintiff]." *Brennon*, 13 Cal. 5th at 684. The Court explained that certain business attributes—"performing business functions, protecting economic value, operating as the functional equivalent of a commercial enterprise, etc."—are "not shared by public school districts engaged in the work of educating students." *Id.* at 681. Rather, "[w]hen acting in their core educational capacity, public school districts do not perform 'customary business functions,' nor is their '*overall function* . . . to protect and enhance . . . economic value.'" *Id.* (emphasis and alterations in original) (quoting *O'Connor v. Vill. Green Owners Ass'n*, 33 Cal. 3d 790, 796 (1983)); *see also id.* at 684 ("[A] public elementary school, particularly in its capacity of providing a free education to a' preschooler with disabilities, is 'acting as a public servant rather than a commercial enterprise and is therefore not subject to the

6

Unruh Act." (quoting *Zuccaro v. Martinez Unified Sch. Dist.*, No. 16-cv-02709-EDL, 2016 WL 10807692, at *13 (N.D. Cal. Sept. 27, 2016)).  Under *Brennon*, it is clear the District cannot be liable for discrimination under the Unruh Act.

A.W. nevertheless argues that the court should apply "public policy factors" to reach the opposite conclusion, balancing (1) the workability of the precedent, (2) whether the precedent is well-reasoned, (3) the age of the precedent, and (4) the reliance interest at stake.  [Opp'n at 14 (citing *Planned Parenthood v. Casey*, 503 U.S. 833 (1992)).]  A.W. maintains that *Brennon* discussed public policy concerns and "the majority even argues that they do not agree with the ruling that they ultimately have to make."  [*Id.* (citing *Brennon*, 13 Cal. 5th at 696).]  At the page cited by A.W., the *Brennon* court merely observed it could not assume the role of the Legislature by reading different statutory text into the Unruh Act.  In any event, this court cannot ignore the California Supreme Court's interpretation of the Unruh Act to advance A.W.'s public policy goals.  *See, e.g.*, *Armstrong v. Reynolds*, 22 F.4th 1058, 1073 (9th Cir. 2022) ("When interpreting state statutory language, federal courts are ordinarily bound by the decisions of the given state's highest court." (citation omitted)).

Accordingly, A.W. cannot plead an Unruh claim against the District and amendment is futile.

**B.      Section 1983**

The District argues that the section 1983 claim fails for two reasons: first, the District is not a "person" but an "arm of the state" immune from suit in federal court under the Eleventh Amendment[3]; alternatively, A.W. does not allege facts sufficient to support that the District violated the Constitution through its policies or otherwise.  [Mot. at 7-12.]

"Section 1983 provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  "Section 1983 is not itself a source

---

[3] "A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or a 12(b)(6) motion."  *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (citing *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2016)).

of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014) (quoting *Hall v. City of L.A.*, 697 F.3d 1059, 1068 (9th Cir. 2012)). To state a claim under section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987). "[A] State is not a person within the meaning of § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989).

"It is well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court." *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017) (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003)). In California, school districts are state agencies that are afforded Eleventh Amendment immunity. *See id.* at 926 ("School districts and [county offices of education] in California remain arms of the state and cannot face suit."); *L. T.*, 2024 WL 3678014, at *4 ("[I]t is well settled that school districts in California are 'arms of the State' for Eleventh Amendment purposes and are therefore not 'persons' within the meaning of § 1983." (quoting *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 251 (9th Cir. 1992), and collecting cases)).

There are three exceptions to Eleventh Amendment immunity. "First, a state may waive its Eleventh Amendment defense. Second, Congress may abrogate the States' sovereign immunity by acting pursuant to a grant of constitutional authority. Third, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a suit against a state official when the suit seeks prospective injunctive relief." *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001) (cleaned up). "Waiver and abrogation are second-stage inquiries as to whether, *if* an entity is immune, that immunity may be overcome." *Kohn v. State Bar of Cal.*, 87 F.4th 1021, 1031 (9th Cir. 2023). None of the three exceptions applies here. As to the first two, "[t]he State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was not intended to abrogate

a State's Eleventh Amendment immunity." *Brown v. Cal. Dep't of Corrections*, 554 F.3d 747, 752 (9th Cir. 2009) (quoting *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir.1999)). The third exception is limited to prospective injunctive relief from continuing or impending state action which violates the federal constitution or a federal statute, and the state official must have "some connection with the enforcement of the act." *Confederated Tribes & Bands v. Locke*, 176 F.3d 467, 469 (9th Cir. 1999) (quoting *Ex Parte Young*, 209 U.S. 123, 157 (1908)). The third exception does not apply as against the District because it is not a state official.

A.W. does not engage with the District's Eleventh Amendment immunity arguments nor does he contend that any of the three exceptions applies.[4] A.W. asserts only that the District "may fairly be said to be a state actor" because it obtains "significant aid from state officials." [Opp'n at 15 (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).] A.W. pulls this quote from *Lugar*'s analysis of the requirement for a section 1983 claim that it be asserted against a "person" acting under the color of state law: "[T]he party charged with the deprivation [of a federal right] must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." 457 U.S. at 937. A.W.'s attempt to apply *Lugar* by asserting that "the school district receives aid from the State of California for funding" [Opp'n at 15] wholly lacks merit, as the District is "not [a] 'person[]' within the meaning of § 1983." *L. T.*, 2024 WL 3678014, at *4.

The District is an arm of the state for Eleventh Amendment purposes and is entitled to immunity against A.W.'s section 1983 claim.[5] The section 1983 claim is dismissed with

---

[4] Ignoring sovereign immunity entirely, A.W. points to two cases in support of his section 1983 arguments. [Opp'n at 15-16.] The cases are plainly inapposite. *Johnson v. Lewis*, 217 F.3d 726 (9th Cir. 2000), concerned class actions brought by prison inmates against prison officials for Eighth Amendment violations under section 1983; it did not (and did not need to) address sovereign immunity as against a state agency. In *Jenkins v. Humboldt County*, No. 09-cv-5899-PJH, 2010 WL 1267113 (N.D. Cal. Mar. 29, 2010), the court dismissed section 1983 claims against the defendant county and various officials for failure to state a claim. The court did not address sovereign immunity because the county was the type of government entity typically subject to section 1983.

[5] The court does not reach the District's alternate argument challenging the sufficiency of the

1 prejudice.

### C. California Education Code § 220

The District argues that A.W.'s claim under California Education Code § 220 fails because A.W. does not allege that he exhausted his administrative remedies and also has not pleaded facts to support that the District acted with deliberate indifference. [Mot. at 12-15.]

Regarding exhaustion of administrative remedies, the District asserts that A.W. has not alleged that he filed a complaint with the District or that he filed an appeal to the California Department of Education as required by California Education Code § 262.3(d). [Mot. at 14-15.][6] In response, A.W. argues that he is excused from the exhaustion requirement by California Education Code § 262.3(c). [Opp'n at 17.]

Sections 262.3 and 262.4 "provide for enforcement of" California Education Code § 220. *Donovan*, 167 Cal. App. 4th at 590-91 (footnote omitted). "Although it authorized a private right of action for a section 220 violation . . . the Legislature also sought to accomplish the policy objectives underlying the antidiscrimination in education law through administrative enforcement, to avoid throwing [public] schools into immediate litigation and to give schools an opportunity to resolve informally as many cases as possible." *Id.* at 607-08 (citation omitted). Thus, Section 262.3(d) provides in full:

> (d) Notwithstanding any other provision of law, a person who alleges that he or she is a victim of discrimination may not seek civil remedies pursuant to this section until at least 60 days have elapsed from the filing of an appeal to the State Department of Education pursuant to Chapter 5.1 (commencing with Section 4600) of Division 1 of Title 5 of the California Code of Regulations. The moratorium imposed by this subdivision does not apply to injunctive relief and is applicable only if the local educational agency has appropriately, and in a timely manner, apprised the complainant of his or her right to file a complaint.

Cal. Educ. Code § 262.3(d). The applicable regulations further provide that: "A complaint of

---

pleading because it is moot.

[6] The complaint alleges only that A.W. "complied with the requirements for claims presentation under the Government Claims Act, California Government Code §810 et seq." [Compl. ¶ 9.]

10

discrimination must be filed with the local educational agency 'not later than six months from the date the alleged discrimination occurred, or the date the complainant first obtained knowledge of the facts of the alleged discrimination.'" *Donovan*, 167 Cal. App. 4th at 604 (quoting Cal. Code Regs. tit. 5, § 4630(b)).[7] A "complaint" "means a written and signed statement alleging a violation of federal or state laws or regulations, which may include an allegation of unlawful discrimination, harassment, intimidation or bullying." Cal. Code Regs. tit. 5, § 4600. "With certain exceptions, within 60 days from the date of the receipt of the complaint the local agency shall 'conduct and complete an investigation' of the complaint, and prepare a written 'agency decision.'" *Donovan*, 167 Cal. App. 4th at 604 (quoting Cal. Code Regs. tit. 5, § 4631(a)). "[T]hese administrative procedures provide a means for the parties to resolve promptly and efficiently complaints of prohibited discrimination before resorting to litigation, thus ensuring our state's education resources are not unnecessarily diverted." *Id.* at 608 n.20 (citing Cal. Educ. Code §§ 200, 201).

Section 262.3(c) states: "Nothing in this chapter shall be construed to require an exhaustion of the administrative complaint process before civil law remedies may be pursued." Cal. Educ. Code § 262.3(c). As one court has observed, "there is some tension between subsections (c) and (d) of § 262.3 inasmuch as the former explicitly eschews exhaustion of administrative remedies as a prerequisite to judicial remedies and the latter explicitly requires parties to pursue administrative remedies[.]" *Annamaria M. v. Napa Valley Unified Sch. Dist.*, No. 03-cv-0101-VRW, 2006 WL 1525733, at *11 (N.D. Cal. May 30, 2006). However, "this ambiguity is reconcilable: Although parties need not exhaust the administrative complaint process, they must at least pursue administrative remedies to the point of having filed an appeal with the California Department of Education and waiting 60 days." *Id.*; *see also id.* at *12 (concluding that plaintiff had "not pursued her administrative remedies to the point required by § 262.3(d)" and that the court accordingly lacked subject matter jurisdiction over her section 220 claim). The court

---

[7] A "'local educational agency' means a county office of education, school district, state special school, or charter school." Cal. Educ. Code § 234.6.

also observed that section 262.4, which codifies the right to a private enforcement action under section 220,[8] "must be read with the limitations detailed in § 262.3 . . . ." *Id.*; *see also Donovan*, 167 Cal. App. 4th at 591.

The court agrees with *Annamaria*'s statutory interpretation that section 262.3(c) does not excuse the administrative exhaustion requirements of section 262.3(d), and A.W. offers no legal authority or argument to the contrary. A.W. has not alleged that he exhausted his administrative remedies by filing a complaint with the local educational agency, followed by an appeal with the California Department of Education. *See Annamaria*, 2006 WL 1525733, at *11; *cf. R.N. v. Travis Unified Sch. Dist.*, No. 20-cv-00562-KJM-JDP, 2020 WL 7227561, at *11-12 (E.D. Cal. Dec. 8, 2020) (finding that plaintiffs failed to exhaust their administrative remedies under section 220 where they alleged that they filed a complaint with the local educational agency but did not allege they filed an appeal to the California Department of Education). A.W.'s section 220 claim is accordingly dismissed with leave to amend, should he be able to allege exhaustion of his administrative remedies.

## IV.  CONCLUSION

For the foregoing reasons, the District's motion to dismiss is granted. A.W. may file an amended complaint consistent with this order by **May 6, 2025**.

**IT IS SO ORDERED.**

Dated: April 22, 2025

_____
Donna M. Ryu
Chief Magistrate Judge

---

[8] Section 262.4 reads, in full: "This chapter may be enforced through a civil action."

12