UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A. W., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SANTA ROSA CITY SCHOOLS, et al.,<br><br>    Defendants. | Case No. 25-cv-00034-DMR<br><br>**ORDER RE: THE DISTRICT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 29 |

Following the court's dismissal of his initial complaint (Docket No. 274, "MTD Order"), on May 6, 2025, Plaintiff A.W., by and through his guardian ad litem Sheria Weston, filed his First Amended Complaint against Defendants Rincon Valley Middle School ("Rincon Valley"), School Principal Amy Schlueter, and Does 1-20. [Docket No. 28, "FAC."] Santa Rosa City Schools, erroneously named as Rincon Valley, (the "District") now moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket No. 29, "Mot."] A.W. filed an opposition (Docket No. 30, "Opp'n"), and the District filed a reply (Docket No. 31, "Reply"). The court held a hearing on June 26, 2025. [Docket No. 36.]

For the reasons discussed below, the District's motion is granted in part and denied in part.

**I.    BACKGROUND**

    **A.    Allegations of the FAC[1]**

"At all relevant times," A.W. was a 7th and 8th grader enrolled at Rincon Valley, located in Santa Rosa, California in the Santa Rosa School District. FAC ¶¶ 1, 13. The FAC does not

---

[1] For purposes of this motion, the court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

specifically state which years A.W. attended Rincon Valley; however, the alleged events took place between January 2023 and April 4, 2024. *Id.* ¶¶ 16, 58. A.W. alleges that he experienced racial harassment and discrimination while he attended Rincon Valley in the form of derogatory name-calling and disparate punishments.[2]

In January 2023, a classmate in A.W.'s math class began calling A.W. the "n-word." *Id.* ¶ 16. Although the teacher of the class and school staff were aware of this conduct, "no action was ever taken to halt this behavior or to ensure the well-being of Plaintiff[,]" and the classmate was not punished. *Id.* ¶ 17. The classmate continued to use the same racial slur against A.W. *Id.* ¶ 19. On January 22, 2023, "A.W. eventually had enough and responded back to the student by simply knocking his hat off his head." *Id.* A.W. alleges that "[t]here was no physical contact made to the actual student nor was the other student injured or harmed in any other way." *Id.*

The next day, a friend of the classmate who had been harassing A.W. retaliated against A.W. for knocking the hat off the classmate's head by "punch[ing] Plaintiff twice in the jaw[.]" *Id.* ¶ 20. "A.W. did not respond with violence and did not retaliate against the student." *Id.* A teacher who witnessed this incident sent the boys to the office. *Id.* ¶ 21. A.W.'s parent and guardian ad litem, Sheria Weston, was called in. *Id.* Weston had a conversation with the vice principal, which turned into an "interrogation" as to what A.W. "'did to create the situation.'" *Id.*

In response and rather than "properly discipline the two racist students," the school removed A.W. "from his own class and forced him to speak to his aggressors in a 'restorative circle.'" *Id.* ¶ 22. The student who assaulted A.W. received a two-day suspension. *Id.* The school did not take any "extra steps . . . to ensure the parents that the safety and well-being of A.W. would be preserved." *Id.* A.W. alleges that Rincon Valley's handling of the situation "demonstrates [that] they are trying to create a false image of A.W.'s supposed 'behavior problems.'" *Id.* ¶ 23.

A week after the January 23, 2023 incident, Weston emailed Rincon Valley to voice her concerns about A.W.'s safety. *Id.* ¶ 24. Because the school had taken "no action" over the week,

---

[2] The court previously stated that "[a]lthough the [initial] complaint fail[ed] to identify A.W.'s race, the court infer[red] from the allegations that he is Black." [Docket No. 27 at 2 n2.] The FAC again does not identify A.W.'s race.

2

Weston feared more violent incidents of this nature or worse would occur to A.W. again. *Id.* In response, Rincon Valley "indirectly punish[ed]" A.W. by "pull[ing] A.W. from all his classes that he shared with the racist student and switch[ing] his entire schedule around." *Id.* ¶ 25. The school's behavior led Weston to contact the NAACP for help and voice her concerns about Schlueter's handling of the situation. *Id.* ¶ 26.

On February 22, 2023, Weston met with A.W.'s math teacher to discuss A.W.'s "struggles with his learning given the abrupt and forced schedule change." *Id.* ¶ 27. A.W. was also present. *Id.* Schlueter "barged into this private meeting and began interrogating Mrs. Weston regarding the complaints she had made to the NAACP." *Id.* A.W. was shocked by this, and "Weston was forced to stop the meeting early as Principal Schlueter kept trying to change the topic of the discussion to Title VI violation concerns that Mrs. Weston had made to the NAACP." *Id.*

In February 2023, the vice principal was called to A.W.'s math class to "remove [A.W.] for 'stacking books on top of each other' with his friends." *Id.* ¶ 29. Although others were involved in stacking books, A.W. was the only student removed and sent to the principal's office. *Id.* This was because the vice principal believed A.W. had smoked marijuana, evidenced by the fact that "A.W. had been 'laughing during class.'" *Id.*

On May 18, 2023, a teacher observed A.W. "'greeting another student,'" which the teacher interpreted as "A.W. and the other student 'exchanging drugs for money.'" *Id.* ¶ 31. A.W. was sent to the office again "with no actual evidence to back up the school's claims." *Id.* A.W. was also sent to see Rincon Valley's guidance counselor—"the ONLY Black staff member on campus"—who "was forced to search A.W.'s personal belongings like a criminal, looking for any drugs." *Id.* ¶ 32. Her search "found no evidence of drugs or money." *Id.*

When Weston picked up A.W. later that day, the guidance counselor "pulled Mrs. Weston aside to share with her that 'she believes that the school is unfairly targeting A.W. on the basis of race.'" *Id.* ¶ 33. Later that day, Weston "emailed Principal Schlueter asking why her son was searched like a criminal with no solid grounds or reason" but was "was given no direct response or answer." *Id.*

On April 11, 2024, "A.W. approached a student who had allegedly used the 'n-word.' The student responded by calling A.W. the 'n-word'" and the situation escalated. *Id.* ¶ 55. "Nearby staff began to protect the student from A.W. while the student continued to hurl homophobic slurs at A.W. while being shielded by the staff." *Id.* The school's report stated that "A.W. was 'so persistent and aggressive' that the school had to call 911 and enter a 'campus-wide lockdown' for 15 minutes." *Id.* ¶ 57. A.W. alleges that "[o]rdering a campus wide lockdown over a 13-year-old being visibly upset is not even remotely close to an appropriate remedy," but that "this was the first time the school had ever responded in any way to an incident that A.W. was a part of." *Id.* ¶ 58. According to Plaintiff, "[t]his clearly shows that [Defendants] are capable of actually doing something as a school but refused to do anything whenever A.W. was the victim." *Id.*

In addition to the above incidents, A.W. was also "banned from basketball tryouts after being 'accused of using a vape'" and "put on the 'No Roam List,' which prohibits him from using the restroom without first checking in with the office."[3] *Id.* ¶ 34. According to A.W., "[t]hese are clear violations of A.W.'s fundamental rights," and "a clear retaliation against A.W. for Weston's NAACP complaint." *Id.*

In 2023 and 2024, A.W. was suspended for "a total of 10 days for minor incidents." *Id.* ¶ 42. These included a 2.5-day suspension for "threatening language towards a staff member;" a 1-day suspension for "violat[ing] his break as a tool," that is, "using technology in class," even though he was permitted to do so in his IEP; and a 2-day suspension "for 'refusing to move away from a window'" which "intimidat[ed] another student." *Id.* ¶¶ 43, 46, 49. In comparison, the student who punched A.W. received only a 2-day suspension, and students who used the "n-word" directed at A.W. and in a TikTok video were not disciplined or punished. *Id.* ¶¶ 44, 47, 50.

Rincon Valley "forced [A.W.] to sign a 'Behavior Contract,'" which had previously been discussed with Weston and which "stripped A.W. of his fundamental rights." *Id.* ¶ 52. Weston was not present when A.W. signed the Behavior Contract, and A.W. alleges that he "felt he had to sign

---

[3] The FAC does not allege when these incidents occurred.

4

i[t]." *Id.* Upon learning of this, Weston emailed Rincon Valley to have the contract repealed. *Id.* ¶ 53.

A.W. alleges that Rincon Valley's actions violate the District's policies regarding unlawful discrimination and complaint procedures. *Id.* ¶¶ 35-41.

### B. Procedural Background

A.W. filed this lawsuit on September 24, 2024 in Sonoma County Superior Court. [Docket No. 1 at ECF pp.5-20, "Compl."] The initial Complaint[4] named Defendants Rincon Valley, Amy Schlueter, and Does 1-20. *Id.* A.W. alleged the following claims: (1) race discrimination in violation of the California Unruh Civil Rights Act, against Schlueter; (2) race discrimination in violation of 42 U.S.C. § 1983 based on Fourteenth Amendment violations, against all Defendants; (3) race discrimination in violation of Title VI of the Civil Rights Act of 1964, against all Defendants; (4) violation of California Education Code section 220, against all Defendants; and (5) negligence, against all Defendants. Compl. ¶¶ 59-88.

The District removed the action to this court on January 2, 2025 and moved to dismiss the Unruh Act, § 1983, and Education Code claims a week later. [Docket Nos. 1, 4.] On April 22, 2025, the Court granted the motion. [Docket No. 27, "MTD Order."] The Court dismissed the Unruh Act and § 1983 claims without leave to amend, but allowed A.W. to amend the Education Code claim to allege facts that he had exhausted his administrative remedies. *Id.* at 5-12.

On May 6, 2025, A.W. filed the FAC, which asserts claims for (1) race discrimination in violation of Title VI of the Civil Rights Act of 1964; (2) violation of California Education Code § 220; and (3) negligence. FAC ¶¶ 59-78. All claims are asserted against all Defendants. *See id.*

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v.*

---

[4] Although the Complaint that was filed with the Notice of Removal was titled "First Amended Complaint for Damages," this appears to be an error and is in fact the initial Complaint.

*Pardus*, 551 U.S. 89, 94 (2007), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (cleaned up). In the absence of an "apparent reason," such as undue delay, bad faith or dilatory motive, prejudice to the opposing party, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

### III.  DISCUSSION

#### A.  Discretionary Act Immunity

The District argues it is entitled to immunity under California Government Code section 820.2 because the alleged conduct "necessarily involved 'the exercise of analysis and judgment as to what was proper under the circumstances.'" Mot. at 8 (quoting *Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1583 (N.D. Cal. 1983)). A.W. contends that the District is not entitled to immunity because, as alleged, "the actions taken by the employees of the school were part of broadly applicable school policies and practices" that were "unconstitutional and unlawful." Opp'n at 12. According to A.W., "all employees were required to follow [these policies and

practices], leading to Plaintiffs' harm." *Id.*

### 1. Discretionary vs. Ministerial Acts

California Government Code section 820.2 states that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Section 815.2(b) extends this immunity to public entities. Cal. Gov't Code § 815.2 ("Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."); *see Kemmerer v. Cnty. of Fresno*, 200 Cal. App. 3d 1426, 1435 (1988), *disapproved of by Quigley v. Garden Valley Fire Prot. Dist.*, 7 Cal. 5th 798, 444 P.3d 688 (2019) ("Though section[] . . . 820.2 expressly immunize[s] only the employee, if the employee is immune, so too is the [public entity].").

"[A] finding of immunity requires a showing that the specific conduct giving rise to the suit involved an actual exercise of discretion, i.e., a conscious balancing of risks and advantages." *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1161 (9th Cir. 2019) (cleaned up). "[A] 'workable definition' of immune discretionary acts draws the line between 'planning' and 'operational' functions of government." *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995) (quoting *Johnson v. State*, 69 Cal. 2d 782, 796 (1968)). "Generally speaking, a discretionary act is one which requires the exercise of judgment or choice." *Johnson*, 69 Cal. 2d at 788 (cleaned up). "On the other hand, . . . there is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." *Caldwell*, 10 Cal. 4th at 981 (citing *Johnson*, 69 Cal. 2d at 796).

Section 820.2 immunity thus "applies to the discretionary act of a public employee if three requirements are met": (1) "the employee must be vested with the authority to exercise discretion;" (2) "the discretionary act in question must be a basic policy decision rather than ministerial;" and (3) "the exercise of discretion must involve 'a conscious balancing of risks and benefits,' but need not be a 'careful, thorough, formal, or correct evaluation.'" *Jones v. Cnty. of Los Angeles*, 722 F. App'x 634, 638 (9th Cir. 2018) (citing Cal. Gov't Code § 820.2; quoting *Caldwell*, 10 Cal. 4th

at 981). "[G]overnment defendants have the burden of establishing that they are entitled to immunity for an actual policy decision made by an employee who 'consciously balanc[ed] risks and advantages . . .'" *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012) (quoting *Johnson*, 69 Cal. 2d at 795 n.8 (second alteration and ellipses in original).

### 2. A.W.'s Allegations

The District appears to argue it is entitled to blanket immunity because the alleged acts concern disciplinary decisions. Mot. at 9 ("The acts or omissions of the DISTRICT and its employees that form the basis of Plaintiff's negligence claim necessarily involved the exercise of analysis and judgment as to what was proper under the circumstances.") (cleaned up). A.W. contends there was no exercise of discretion because "there were abundant procedures and policies set forth by the District that all employees were required to follow, leading to Plaintiffs' harm." Opp'n at 12.

Although some cases support the proposition that "'[d]ecisions by a school's supervisory personnel regarding disciplinary matters are . . . considered discretionary and within the scope of section 820.2[,]'" other courts have recognized that such an approach "requires the Court to make inferences and assume facts in Defendants favor, which is inappropriate" on a Rule 12(b)(6) motion. *Lema v. Bd. of Trs. of Cal. State Univ. Sys.*, No. 21-cv-02131-JAH-KSC, 2023 WL 3572882, at *7 (S.D. Cal. May 17, 2023) (citing *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1122 (E.D. Cal. 2011)); *J.M. v. Parlier Unified Sch. Dist.*, No. 1:21-CV-0261 AWI BAM, 2021 WL 5234770, at *7 (E.D. Cal. Nov. 10, 2021) ("Without more specific allegations, the Court cannot hold that [the principal's] supervision of [the school police officer] constitutes disciplinary actions against [the plaintiff]. While [the plaintiff] was sent to [the principal's] office for disciplinary reasons (he was allegedly acting disruptive in class), that does not mean that every action that occurred in [the principal's] office was a 'disciplinary' action. Thus, the Court cannot hold at this time that § 820.2 applies."); *Clifford v. Regents of Univ. of Cal.*, No. 11–CV–02935–JAM–GGH, 2012 WL 1565702 (E.D. Cal. Apr. 20, 2012); *Thompson v. Sacramento City Unified Sch. Dist.*, 107 Cal. App. 4th 1352, 1361 (2003); *Nicole M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389-90 (N.D. Cal. 1997)) (alterations in original).

8

The District argues that *Nicole M.* and *Petaluma City School District*—both of which apply a blanket rule of immunity to disciplinary actions taken against students—are "controlling cases." Reply at 2; *see* Mot. at 9. In *Nicole M.*, the plaintiff alleged that she was subjected to unwanted sexual comments and touching by male students while attending junior high, and that the school took inadequate and counter-productive measures to prevent such harassment. 964 F. Supp. at 1372. She sued the school, school superintendent, and school principal asserting, among other things, a claim for negligent retention, supervision, training and discipline, and a claim for negligent infliction of emotional distress. *Id.* The court found that "[d]ecisions by a school principal or superintendent to impose discipline on students and conduct investigations of complaints necessarily require the exercise of judgment or choice, and accordingly are discretionary, rather than ministerial, acts." *Id.* at 1389-90. For that reason, the court found that defendants were entitled to section 820.2 immunity for the aforementioned claims. *Id.* at 1390.

In *Petaluma City School District*, the plaintiff "allege[d] that she was repeatedly subjected to sexual harassment by other students throughout seventh and eighth grades." 830 F. Supp. 1560, 1564. She asserted claims for, among others, intentional and negligent infliction of emotional distress against the school district, school principal, and school counselor. *Id.* The court found that the defendants were immune from the emotional distress claims pursuant to section 820.2, noting that "[t]he same considerations [in *Kemmerer*] appl[ied,]" namely:

> "The decision whether or not to initiate discipline proceedings and what discipline to impose is placed initially on the department head and the decision is entirely within his discretion. The decision involves the exercise of analysis and judgment as to what is just and proper under the circumstances and is not purely a ministerial act."

*Id.* at 1583 (quoting *Kemmerer*, 200 Cal. App. 3d at 1437, 1438).

Neither *Nicole M.* nor *Petaluma City School District* explained why the disciplinary decisions at issue were discretionary rather than a ministerial application of a pre-formulated school policy. Although not addressed by either the District or A.W., not all courts take the same approach used by the courts in *Nicole M.* and *Petaluma City School District*. Rather, "[c]ourts appear to apply [section 820.2] inconsistently: Some courts declare all disciplinary decisions discretionary . . . ; others decline to liberally immunize all disciplinary decisions. . . ." *Wormuth v. Lammersville*

*Union Sch. Dist.*, 305 F. Supp. 3d 1108, 1131 (E.D. Cal. 2018) (citations omitted); *see J.M. v. Parlier Unified Sch. Dist.*, No. 21-CV-0261 AWI BAM, 2021 WL 5234770, at *7 (E.D. Cal. Nov. 10, 2021) ("California courts appear to view school disciplinary decisions as being within the scope of § 820.2. . . . California federal courts, however, seem to disagree and hold that § 820.2 does not provide a blanket immunity to school disciplinary decisions.") (collecting cases and finding that it could not find, at the motion to dismiss stage, that section 820.2 applied).

In *Wormuth*, the five-year-old plaintiff with special education needs sued the school district, superintendent, assistant superintendent, and principal for constitutional violations, violations of state and federal civil rights laws, and negligence. 305 F. Supp. 3d at 1116. The plaintiff alleged that the defendants failed to prevent a classmate from pushing, kicking, and spitting on the plaintiff and inappropriately touching the plaintiff in the bathroom. *Id.* at 1114-16. At summary judgment, the defendants argued that section 820.2 shielded them from liability. *Id.* at 1129-31. The court held that the superintendent and assistant superintendent were entitled to immunity, as they "failed to implement school-wide policies." *Id.* at 1130; *see id.* ("Whether a specific policy is proper under the circumstances is precisely the kind of decision section 820.2 immunizes.").

The principal, however, was "not automatically immune from liability for all his responses to plaintiff's bullying just because they may have involved discretion." *Id.* Rather, "[f]or immunity to apply, [the principal] must show he actually rendered a considered decision, and must show that in deciding to perform (or not perform) the act which led to the plaintiff's injury, the employee consciously exercised discretion in the sense of assuming certain risks in order to gain other policy objectives." *Id.* (cleaned up). As the "[p]rincipal . . . ha[d] not engaged in this detailed analysis, arguing instead for blanket discretionary immunity[,]" the court could not "find section 820.2 immunizes [the p]rincipal . . . for any liability based on his disciplinary decisions." *Id.* at 1131.

In *T.L. v. Orange Unified School District*, No. 23-cv-01078-FWS-KES, 2024 WL 305387, at *17 (C.D. Cal. Jan. 9, 2024), the court denied the defendants' motion to dismiss on section 820.2 immunity grounds. Among other things, the plaintiff, a 14-year-old student, alleged that two assistant principals summoned the plaintiff to the office and "interrogated" the plaintiff about accusations of sexual assault. *Id.* at *2. The court rejected the defendants' argument that "school

10

officials may lawfully detain minors on school grounds to investigate disciplinary issues so long as the detention is not arbitrary, capricious, or for the specific purpose of harassment." *Id.* (cleaned up). The court found that the defendants "ha[d] not sufficiently demonstrated that each school employee [wa]s 'vested with the authority to exercise discretion' or that the decisions related to Plaintiff's disciplinary process were 'basic policy decision[s] rather than ministerial' ones." *Id.* (citing *Jones*, 722 F. App'x at 638) (third alteration in original).

The court declines to adopt a blanket approach to immunity, especially at the pleadings stage. Precedent is clear that "a finding of immunity requires a showing that the specific conduct giving rise to the suit involved an actual exercise of discretion, i.e., a conscious balancing of risks and advantages." *Steinle*, 919 F.3d at 1161. To automatically find that school districts and employees are entitled to immunity for school disciplinary actions circumvents any analysis as to whether the discipline was the result of a "conscious balancing of risks and advantages" or a "'ministerial' decision that merely implement[ed] a basic policy already formulated." *Caldwell*, 10 Cal. 4th at 981.

Defendants here have not demonstrated that Schlueter and the Rincon Valley faculty and staff who took disciplinary actions against A.W. were "vested with the authority to exercise discretion" or that "the decisions related to [A.W.'s] disciplinary process were 'basic policy decision[s] rather than ministerial' ones." *Orange Unified Sch. Dist.*, 2024 WL 305387, at *17 (quoting *Jones*, 722 F. App'x at 638). The FAC makes it difficult to do so. *See also AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 640 (9th Cir. 2012) ("It would be odd indeed if a plaintiff included in a Complaint allegations that would establish a basis for finding discretionary act immunity on the part of government defendants.").

Specifically, the FAC is not always clear who at Rincon Valley took disciplinary action against A.W. The majority of the FAC's allegations refer to unidentified teachers and staff or to the school generally. *See, e.g.*, FAC ¶ 22 ("The school's 'response' to this incident, rather than properly discipline the two racist students, was to remove A.W.---the victim---from his own class and force him to speak to his aggressors in a 'restorative circle.'"); *id.* ¶ 25 ("The school's response to Ms. Weston's valid concerns was to once again indirectly punish A.W."); *id.* ¶ 31 ("On May 18, 2023,

11

A.W. was subjected to yet another meritless accusation from the staff of Rincon Valley. . . . A.W. was once again sent to the office with no actual evidence to back up the school's claims."); *id.* ¶¶ 43, 49 (alleging that A.W. was suspended from school, but not identifying who made the decision to impose the suspension); *id.* ¶ 52 ("Rincon Valley administration forced him to sign a 'Behavior Contract.'"); *id.* ¶ 55 ("On April 11, 2024, A.W. was involved in an altercation with another student where Plaintiff was shown disparate treatment by the staff."); *id.* ¶ 56 ("Rincon Valley has a clear policy against such aggressive, racist behavior involving using homophobic and racial slurs. But apparently on this day, the school decided to not enforce these policies, and the offending student was not disciplined.").

As to Schlueter, although the FAC alleges that she engaged in "completely inappropriate and unacceptable" behavior "by barg[ing] into [a] private meeting and . . . interrogating Mrs. Weston regarding the complaints she had made to the NAACP" (*id.* ¶¶ 27-28) there are no allegations indicating that she was involved in the decisions to punish A.W, impose more lenient punishments on the students who engaged in discriminatory conduct, or not punish those students at all. Similarly, although the FAC identifies Vice Principal Stephen Coyle (*id.* ¶ 29), the District makes no argument as to whether he is vested with authority or why his alleged decision to send A.W. to the principal's office for smoking marijuana was discretionary.[5]

---

[5] A.W. offers no further clarity as to whether the alleged conduct was discretionary. Instead, A.W. appears to contradict the plain allegations of the FAC. In the FAC, A.W. alleges that the District implemented policies to prevent discrimination, but that school employees did not follow them. FAC ¶ 35 ("There are multiple policies listed by the District that the school directly violated."); *id.* ¶ 37 ("The actions of Rincon Valley are a direct violation of this policy" on "Nondiscrimination Harassment[.]"); *id.* ¶ 38 ("The actions of Rincon Valley are a clear and direct violation of this policy" which provides, among other things, that "the compliance officer shall begin the investigation and shall implement immediate measures necessary to stop the discrimination and ensure that all students have access to the educational program and a safe school environment.") (emphasis omitted). Yet A.W. now argues that "the District authorized unconstitutional and unlawful policies for their employees to engage in" and that "all employees were required to follow, leading to Plaintiffs' harm." Opp'n at 12. A.W. cannot rewrite the FAC's allegations in order to argue that the alleged acts were not discretionary. *Railey v. Pentagon Fed. Credit Union*, No. EDCV 22-2166 JGB (SPX), 2023 WL 3564789, at *5 (C.D. Cal. Apr. 13, 2023) ("[A] litigant cannot assert '"new" allegations' for the first time in an opposition to a Rule 12 motion.") (quoting *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); alterations in original).

Accordingly, the court denies the Motion to Dismiss on section 820.2 grounds without prejudice.[6]

### B. Injunctive Relief

The District argues there are no allegations that A.W. is likely to suffer a substantial and irreparable injury and that damages are not an appropriate remedy. Mot. at 6. At the hearing, the District confirmed that its motion to dismiss the prayer for injunctive relief is essentially a motion to dismiss the Education Code section 220 claim. The Court previously dismissed the section 220 claim on grounds that A.W. failed to plead facts showing he had exhausted his administrative remedies, a prerequisite for seeking damages under section 220. MTD Order at 10-12; Cal. Educ. Code § 262.3(d) ("[A] person who alleges that he or she is a victim of discrimination may not seek civil remedies pursuant to this section until at least 60 days have elapsed from the filing of an appeal to the State Department of Education . . . ."). In the FAC, A.W. does not seek damages in connection with the Education Code claim, nor does he plead any facts showing exhaustion. Instead, A.W. seeks only injunctive relief, which is exempted from the exhaustion requirement. FAC p.11 ¶ A; Cal. Educ. Code § 262.3(d) ("The moratorium imposed by this subdivision does not apply to injunctive relief . . . ."). The court therefore construes the District's challenge to injunctive relief as a motion to dismiss the section 220 claim.

A.W. contends, without citation, that the District incorrectly applies a "preliminary injunction standard" by requiring an irreparable and imminent injury, and that he has "asserted [his] rights to very clear, specific relief." Opp'n at 11.

Injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). "[T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.*

---

[6] This finding does not preclude the District from re-raising section 820.2 immunity at a later juncture, provided there is sufficient factual and legal support for such an argument.

13

1  at 102 (citations omitted). "In other words, the 'threatened injury must be certainly impending to constitute injury in fact' and 'allegations of possible future injury are not sufficient.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Thus, "[a] plaintiff seeking prospective injunctive relief must demonstrate that he is realistically threatened by a repetition of the violation." *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014) (cleaned up). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea*, 414 U.S. at 495-96. The court agrees that the FAC fails to allege facts showing a "likelihood of substantial and immediate irreparable injury." *Lyons*, 461 U.S. at 111. The FAC alleges that "[d]uring the relevant material times, Plaintiff A.W. was a 7th and 8th grader enrolled at Rincon Valley Middle School." FAC ¶ 13. According to the FAC, the discrimination and harassment began in January 2023 (*id.* ¶ 16) and ended in April 2024 (*id.* ¶ 55). *See id.* ¶ 42 ("From 2023-2024, A.W. was suspended a total of 10 days for minor incidents."). Although not clearly alleged, there is a reasonable inference that A.W. was an 8th grader in 2024 and has since left Rincon Valley Middle School and is now in high school. A.W. appears to concede this fact. Rather than assert that he still attends Rincon Valley Middle School, A.W. contends in his opposition brief that "Plaintiff still remains enrolled at the Santa Rosa City School District and there is a high probability that the same conduct that led to this litigation will continue at the District unless Plaintiff is successful in this lawsuit." Opp'n at 11.

This argument does not save the claim. First, the FAC contains no allegations that A.W. continues to attend a school in the Santa Rosa City School District. *See Railey*, 2023 WL 3564789, at *5 ("[A] litigant cannot assert '"new" allegations' for the first time in an opposition to a Rule 12 motion.") (quoting *Schneider*, 151 F.3d at 1197 n.1; alterations in original). Second, there are no allegations that the allegedly discriminatory and harassing conduct has continued past A.W.'s 8th grade year to suggest that the risk of him facing the same treatment is "'real and immediate,' not 'conjectural' or 'hypothetical.'" *Lyons*, 461 U.S. at 102 (citations omitted).

14

Accordingly, the court grants the District's motion as to the section 220 claim, because it only seeks injunctive relief. The dismissal is with leave to amend in the event A.W. can allege facts establishing a viable section 220 claim.

### C. Rincon Valley

The District argues that Rincon Valley is not a proper party, as it is a sub-entity of the District as defined by California Government Code section 811.2, and thus is not capable of being sued as an independent entity.[7] Mot. at 5. At the hearing, A.W. confirmed that he does not dispute that Rincon Valley is an improper party. Instead, A.W. asserts that he should be allowed to amend the FAC to name the District, and that the entire action cannot be dismissed as long as the District had notice of the suit within the period proscribed by Rule 4(m). Opp'n at 10 (citing "Federal Rule of Civil Procedure § 15(c)(3)"[8] and *Schiavone v. Fortune*, 477 U.S. 21 (1986)).

As Rincon Valley is not an entity capable of being sued, Rincon Valley is dismissed with prejudice. *See Petaluma City Schools*, 830 F. Supp. at 1583 (dismissing with prejudice school as improper defendant). A.W. may amend the FAC to name the District.

### IV. CONCLUSION

The court rules as follows:

1. The motion to dismiss on section 820.2 immunity grounds is denied without prejudice to the District re-raising its immunity argument, if appropriate;
2. The motion to dismiss the section 220 claim, which only seeks injunctive relief, is granted with leave to amend; and
3. The motion to dismiss Rincon Valley is granted with leave to amend.

//

//

//

---

[7] Although the District's first motion to dismiss noted that Santa Rosa City Schools was erroneously named as Rincon Valley (Docket No. 4 at 1), the District did not raise this argument in its prior briefing, nor did A.W. name the District in the FAC.

[8] A.W. cites "Federal Rule of Civil Procedure § 15(c)(3)." As there is no such provision of Rule 15, the court assumes that A.W. intended to refer to Rule 15(c)(1)(C).

Any amended complaint shall be filed by July 15, 2025 and may only address the deficiencies identified in this order. Plaintiff must plead his best case.

**IT IS SO ORDERED.**

Dated: July 1, 2025

Donna M. Ryu
Chief Magistrate Judge

16